UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHRISTOPHER GLENN GREGORY,

       Plaintiff,

   v.                                                1:14-CV-1012

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

Plaintiff Christopher Glenn Gregory brought this suit under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") benefits. Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his application for benefits is not supported by substantial evidence and is contrary to the applicable legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

I.     PROCEDURAL HISTORY

Plaintiff filed an application for supplemental security income on July 21, 2011. The claim was denied by initial determination dated October 17, 2011. Plaintiff filed a timely request for a hearing on January 26, 2012. Plaintiff appeared and testified at a hearing held on October 25, 2012, in Albany, New York. Administrative Law Judge ("ALJ") Michelle S. Marcus presided over the hearing. Plaintiff was represented by

a non-attorney representative. The ALJ issued an unfavorable decision on March 14, 2013, which Plaintiff appealed. The Social Security Appeals Council denied his appeal on June 17, 2014. This action followed.

II. FACTS

The parties do not dispute the underlying facts of this case as set forth by Plaintiff in his memorandum of law. Accordingly, the Court assumes familiarity with these facts and will set forth only those facts material to the parties' arguments.

III. THE COMMISSIONER'S DECISION

At step one of the five-step sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his July 21, 2011 application date. Tr. 17. At step two, the ALJ found that Plaintiff's spina bifida occulta, social phobia, dysthymic disorder, and substance abuse in partial remission were severe impairments. Tr. 17. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing(s)"). Tr. 17-18. Next, the ALJ considered Plaintiff's subjective complaints, along with the medical and other evidence, and concluded that Plaintiff's subjective complaints were not credible to the extent alleged. Tr. 19-24. Rather, the ALJ determined that the medical evidence and record as a whole indicated that Plaintiff had the residual functional capacity ("RFC") to: "perform light work as defined in 20 C.F.R. § 416.967(b); however, he is limited to unskilled work and can have no more than occasional interaction with the public." Tr. 18. The ALJ then found that this RFC prohibited the performance of Plaintiff's past relevant work, but allowed Plaintiff to perform a significant number of other jobs that exist in the national economy. Tr. 24-25. Because such jobs were available to a person with Plaintiff's RFC, the ALJ concluded that Plaintiff was "not disabled" under SSA regulations. Id.

IV.     STANDARD OF REVIEW

The Court's review of the Commissioner's determination is limited to two inquiries. See 42 U.S.C. § 405(g). First, the Court determines whether the Commissioner applied the correct legal standard. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Shane v. Chater, No. 96-CV-66, 1997 WL 426203, at *4 (N.D.N.Y July 16, 1997)(Pooler, J.)(citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Second, the Court must determine whether the Commissioner's findings are supported by substantial evidence in the administrative record. See Tejada, 167 F.3d at 773; Balsamo, 142 F.3d at 79; Cruz, 912 F.2d at 11; Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). A Commissioner's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez, 77 F.3d at 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted). In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d

3

293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

V.  DISCUSSION

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence, and that the ALJ erred by according his treating psychologist's opinion "very little weight." In this regard, Plaintiff points out that his mental health treating source, Richard Higgins, Psy.D., completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form on July 10, 2012. Dr. Higgins opined that Plaintiff has mild limitations in understanding and remembering simple instructions, carrying out simple instructions and the ability to make judgements on simple work-related decisions; has moderate limitations interacting appropriately with supervisors and responding appropriately to usual work situations and changes in a routine work setting; and has marked limitations in understanding and remembering complex instructions, carrying out complex instructions, the ability to make judgments on complex work-related decisions, and interacting appropriately with the public and co-workers.

Plaintiff contends that although Dr. Higgins' opinion is entitled to controlling weight, the ALJ assigned only "very little weight" to this medical assessment. Tr. 23. Plaintiff argues that because Dr. Higgins' opinion is well-supported by the record, the Commissioner's decision must be reversed or, in the alternative, the matter be remanded for further proceedings. The Commissioner argues that the ALJ properly accorded Dr. Higgins' opinion very little weight, and that the RFC determination is supported by substantial evidence and is legally correct. Therefore, the Commissioner argues, the decision in this case must be affirmed.

Normally, an ALJ is required to find a treating physician's opinion to be controlling when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. 404.1527(c)(2). "On the other hand, in situations where 'the treating physician issued opinions that [were] not consistent with other substantial

4

evidence in the record, such as the opinion of other medical experts,' the treating physician's opinion 'is not afforded controlling weight." Pena ex rel. E.R. v. Astrue, 2013 WL 1210932, at *15 (E.D.N.Y. March 25, 2013) (quoting Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004)); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir.1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." Snell, 177 F.3d at 133. "'[T]o override the opinion of the treating physician, we have held that the ALJ must consider, *inter alia*: (1) the frequen[c]y, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" Greek v. Colvin, 802 F.3d 370, 375 (2d Cir. 2015) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ must "set forth her reasons for the weight she assigns to the treating physician's opinion." Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000).

As indicated above, Dr. Higgins assessed that Plaintiff had mild limitations in understanding, remembering, and carrying out simple instructions, and the ability to make judgments on simple work-related decisions; and moderate limitations in interacting appropriately with supervisors, and responding appropriately to usual work situations and to change in a routine work setting. Tr. 310-311. Using the definitions of "mild" and "moderate" from the form Dr. Higgins used, Plaintiff was "still able to function satisfactorily" in these areas. Thus, the ALJ's determination that Plaintiff had a RFC enabling him to perform unskilled work is consistent with the mild and/or moderate limitations assessed by Dr. Higgins. Tr. 18; see 20 C.F.R. § 416.968(a).[1]

---

[1]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we

(continued...)

5

Because there is no contradiction between Dr. Higgins' opinion in this regard and the RFC determination, there is no basis to assess error or find that the RFC is not supported by substantial evidence.

Plaintiff's argument, however, centers on the ALJ's rejection of Dr. Higgins' assessment that Plaintiff had "marked" limitations in (1) understanding, remembering, and carrying out complex instructions; (2) the ability to make judgments on complex work-related decisions, and; (3) interacting appropriately with the public and with co-workers. Tr. 310-11. The form that Dr. Higgins used defined "marked" as "a serious limitation in this area" with a "substantial loss in the ability to effectively function." Tr. 310. Even when using this definition for Dr. Higgins' assessment of a marked limitation in the first two areas referenced above, there still in no inconsistency with the ALJ's RFC determination because unskilled work does not require completing or performing complex functions. See fn.1, *supra*. Thus, even assuming that Plaintiff had marked restrictions in performing or completing complex functions as Dr. Higgins opined, this limitation is not inconsistent with the ALJ's RFC determination.

Plaintiff argues, however, that the ALJ erred by giving very little weight to Dr. Higgins' assessment that Plaintiff had marked limitations "in interacting appropriately with the public and with co-workers." In this regard, Plaintiff argues that the evidence supported Dr. Higgins' opinion that Plaintiff had this extreme interaction limitation, and, therefore, the ALJ erred in finding that Plaintiff had the RFC to perform unskilled work even if limited to "no more than occasional interaction with the public." The Court does not agree that the ALJ erred.

ALJ Marcus performed a thorough review of the medical and testimonial evidence surrounding

---

[1](...continued)
consider jobs unskilled if the primary work duties are handling, feeding and off bearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. § 416.968(a).

6

Plaintiff's physical and psychological impairments. See generally Tr. 17-24. In determining what weight to afford Dr. Higgins' opinion expressed in the Medical Source Statement of Ability to Do Work-Related Activities (Mental) form, the ALJ examined the totality of the medical records relative to Plaintiff's treatment for his mental impairment. Tr. 20. The ALJ noted that at Plaintiff's intake session at the Columbia County Mental Health Center ("CCMHC") on June 9, 2010, Plaintiff reported that "if there was a group of more than five people, he was unable to attend, a situation which had resulted in social, employment, and relationship issues." Tr. 20. Plaintiff also indicated at this time, however, "that some of the irritability had decreased now that he was working and that the symptoms had been present for most of his life but had become particularly bothersome over the past two or three years." Tr. 20. Plaintiff also indicated that previously, when he was abusing alcohol, he became angry easily and one time punched a wall, but that he has had no alcohol since this previous outburst. Id.

The medical records also indicated that Plaintiff was seen in regular mental health treatment sessions at CCMHC, and Plaintiff indicated in August 2011 that he was working for a friend painting his house. He also acknowledged that he had made progress with his social phobia over the course of his treatment, going into stores more often to get painting supplies. Id. Plaintiff also indicated on January 19, 2012 that he was doing better socially although he was experiencing a significant increase in pain and stress after a truck had fallen on him, hurting his back. Id. The medical records indicated that although Plaintiff reported depression and anxiety symptomology which increased as his pain increased, his depression and anxiety were characterized as moderate. Id. [2]

---

[2] The medical records also indicate that on September 11, 2012, Plaintiff's therapist encouraged him "to shift into more passive activity due to his frustration and boredom such as working on a computer or obtaining his high school diploma." Tr. 21. It is unclear whether the recommendation to obtain a high school diploma implied participation in a conventional educational setting, which would indicate that the therapist felt Plaintiff's social phobia had decreased.

7

> The ALJ also noted:
>
> > Treatment notes with Helen H. Brady, N.P., indicate that the claimant has been seen for working diagnoses of insomnia, COPD, anxiety disorder, alcohol rehabilitation, drug dependence, bipolar disorder, and lumbar sprain and strain since June 2011 when he reported back pain of one month's duration. . . . It was noted on December 13, 2011, that the claimant was complaining of pain in the mid to lower back; however, the claimant also acknowledged that he had gone hunting three days earlier and "needed to tack [*sic*] a deer for 2 hrs - increasing his back pain which doesn't radiate to legs but the rt arm hurts at shoulder". On January 17, 2012, the claimant reported that he had injured his back two months earlier with initial improvement of symptoms; however, carrying firewood had exacerbated his pain and he indicated that he was not able to work because of the pain. On February 16, 2012, the claimant indicated that he was still experiencing lower back pain with no loss of strength, was doing some back exercises, but was not working due to pain; however, the claimant also stated that he would like to return to work as a painter or automechanic but "feels there are no jobs." <u>Nonetheless, referencing past symptoms of bipolar disorder and depression which resulted in previous terminations due to lost time, the claimant asserted that he "feels he could work now".</u> On his most recent visits in August and September 2012, the claimant reported that he was doing well and admitted that he was still smoking marijuana several times each day, also using his inhaler to control COPD flare-ups.
>
> Tr. 21 (citations omitted, emphasis added).

The ALJ acknowledged that, generally, "a treating source's opinion as to the nature and severity of an impairment is given greater weight than opinions from other sources and will be accorded controlling weight if well supported by medically accepted clinical and laboratory techniques and not inconsistent with other substantial evidence." Tr. 21; <u>see also</u> <u>id.</u> 22-23 ("Generally, a treating source's opinion on the issues of the nature and severity of an impairment will be given more weight than opinions from other sources but will be given controlling weight only if the opinion is both well-supported by medically acceptable clinical and laboratory techniques and not inconsistent with the other substantial evidence in the case. In any event, a medical source opinion is assessed and appropriately weighed for compliance with all relevant criteria to assure, to the fullest extent, a fair and comprehensive clinical basis supports all findings, conclusions, and offered diagnoses."). The ALJ also noted that a claimant's subjective complaints are credited only when objective medical signs and findings show the existence of a medical impairment which could reasonably be

8

expected to produce such complaints, Tr. 21, and correctly stated that the evidence must be systematically evaluated "to first review objective diagnostic testing, then contrast clinical findings, treatment modalities, and therapeutic response with hearing testimony to fully assess claimant's credibility.  When pain or other symptoms are alleged, that alone is not conclusive evidence of disability. There must be objective medical signs and findings which would show the existence of a medical impairment which could reasonably be expected to produce such pain or functional limitations."  Tr. 21-22.

Conducting an evaluation in this manner, and considering the totality of the documentary evidence and testimony provided at the hearing, the ALJ concluded:

> [I]t fully appears that, in the instant case, objective signs and clinical findings indicate a higher level of functioning than that alleged by claimant at the hearing. The claimant alleges that all significant gainful activity is precluded because of impairments.  Although the claimant appears to have some limitations associated with mental and physical impairments, the claimant's testimony is not credible to the extent that it is construed to mean that his limitations are so severe that he cannot engage in any work activity. This is inconsistent with the objective medical evidence,  treatment regimen, and the evaluations of various examining and treating medical sources.

Tr. 22.

In support of her conclusion that Plaintiff retained an RFC to perform unskilled  work with "no more than occasional interaction with the public," the ALJ wrote:

> From a psychological perspective, there is no evidence of impairment which would preclude all work activity since mental functioning is generally within normal limits despite some symptoms of depression and anxiety.[3] The undersigned has fully considered the conclusions

---

[3]The ALJ noted that a consultative psychological evaluation performed by Brett T. Hartman, Psy. D., revealed that Plaintiff had been going to mental health counseling sessions since April 2010 due to anger outbursts, but his mental status examinations were generally within normal limits, revealing only mildly impaired attention and concentration and intact recent and remote memory skills. Tr. 22.  Dr. Hartman rendered a diagnostic impression of major depressive and anxiety disorders and concluded that the claimant was able to follow and understand simple directions; had a fair ability to maintain a regular schedule and make appropriate decisions; had mild difficulty maintaining attention and concentration or learning new tasks; had only mild to moderate difficulty relating adequately with others or dealing appropriately with normal life stressors; and was likely to have difficulty performing certain types of tasks given his stated physical concerns. Tr. 22.  However, the ALJ also accorded little weight to the "limitations

(continued...)

of one of the claimant's treating mental health practitioners that the claimant has marked inability to interact appropriately with the public or co-workers and moderate limitation in interacting appropriately with supervisors or responding appropriately to usual work situations or changes in a routine work setting. The undersigned, however, accords very little weight to conclusions of limitations as contained in this form inasmuch as they are inconsistent with the remainder of the evidence which indicates that claimant's subjective complaints are not commensurate with any physical findings or clinical assessments.

. . .

Viewing the totality of circumstances, little in the documentary evidence suggests that the severity, frequency, and duration of physical discomfort or emotional dysfunction are as persistent, intrusive, or progressive as claimant has alleged. The claimant simply cannot be considered a fully credible witness since it is noted that his testimony of activities as given during the hearing is contrary to the types of activities which he has reported during regular follow-up visits. For instance, . . . claimant's assertions of inability to interact with groups of five or more people had by his own report improved by June 2011 according to mental health treatment records. In sum, based on mental health treatment notes and Dr. Hartman, the consultative examiner's examination, there appear to be issues concerning generalized stress. Thus, the residual functional capacity assigned herein limits the claimant to unskilled work. To address issues with "crowds" and social phobia, the claimant is limited to only occasional interaction with the public. It is noted, however, that the claimant does go out to school functions and socializes as he has been encouraged to do by his mental health practitioners, further indication that he is not as limited socially as what he described at the hearing.

Tr. 23-24 (citations omitted).

Plaintiff has failed to identify where in the administrative record medical evidence exists that corroborates the severity, frequency, duration, persistence, intrusiveness, or progressiveness of his emotional dysfunction in dealing with people as represented in Dr. Higgins' form report, and the Court finds none. Further, as the ALJ points out, Plaintiff indicated that he is capable of occasional interaction with the public and stated that he "feels he could work now."

---

[3](...continued)
assessed by the consultative psychologist since there is nothing in the record which corroborates such limitations." Tr. 23.

In determining the weight to accord Dr. Higgins' opinion, the ALJ considered (1) the frequency, length, nature, and extent of Plaintiff's mental health treatment; (2) the amount of medical evidence supporting Dr. Higgins' opinion; (3) the consistency of Dr. Higgins' opinion with the remaining medical evidence; and, (4) the fact that Dr. Higgins is a mental health specialist. Further, the ALJ stated the reasons for the limited weight she assigned to Dr. Higgins' opinion. The ALJ's decision satisfies the Commissioner's obligation, see Greek, 802 F.3d at 375; Shaw, 221 F.3d at 134, and demonstrates that there was a proper basis for according Dr. Higgins' opinion very little weight. Further, the Court finds that the ALJ's RFC determination is supported by substantial evidence.

VI.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is DENIED. The Commissioner's motion for judgment on the pleadings is GRANTED. The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

Dated: March 9, 2016

Thomas J. McAvoy
Senior, U.S. District Judge